**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MELISSA KAY COOK, Individually;
MELISSA KAY COOK, as Guardian Ad
Litem of Baby A, Baby B, and Baby
C,

*Plaintiffs-Appellants*,

v.

CYNTHIA ANNE HARDING, M.P.H.,
Director of the Los Angeles County
Department of Public Health, in her
official capacity; JEFFERY D.
GUNZENHAUSER, M.D., M.H.P.,
Health Officer and Medical Director
for the Los Angeles County
Department of Public Health; DEAN
C. LOGAN, Registrar-
Recorder/County Clerk for Los
Angeles County in his official
capacity; EDMUND G. BROWN, JR.,
Governor of the State of California;
KAREN SMITH, M.D., M.P.H.,
Director and State Public Health
Officer for the California
Department of Public Health; C. M.,
an adult male believed to be the
genetic father of Baby A, Baby B
and Baby C; KAISER FOUNDATION
HOSPITAL; PANORAMA CITY

No. 16-55968

D.C. No.
2:16-cv-00742-
ODW-AFM

OPINION

MEDICAL CENTER; PAYMAN
ROSHAN, Senior Vice President and
Patient Administrator of Panorama
City Medical Center; XAVIER
BECERRA,[*] Attorney General,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted November 9, 2017
Pasadena, California

Filed January 12, 2018

Before:  Stephen Reinhardt and Kim McLane Wardlaw,
Circuit Judges, and Wiley Y. Daniel,[**] District Judge.

Opinion by Judge Reinhardt

---

[*] Xavier Becerra is substituted for his predecessor, Kamala Harris. Fed. R. App. P. 43(c)(2).

[**] The Honorable Wiley Y. Daniel, United States District Judge for the U.S. District Court for Colorado, sitting by designation.

## SUMMARY[***]

### Civil Rights

The panel affirmed, on issue preclusion grounds, the district court's dismissal of an action challenging the constitutionality of California Family Code Section 7962, which codified California cases that found gestational surrogacy contracts enforceable.

The panel first held that the district court was wrong to abstain from hearing this case under *Younger v. Harris*, 401 U.S. 37 (1971). The panel held that this case did not fall within the two limited categories of civil cases that define *Younger*'s scope, as set forth in *Sprint Commc'ns., Inc. v. Jacobs*, 134 S. Ct. 584, 593-94 (2013). Thus, the panel determined that plaintiff's then pending state court constitutional challenge to Section 7962 was neither a civil enforcement proceeding, nor was it within the category of cases that involve the State's interest in enforcing the orders and judgments of its courts.

The panel affirmed the district court on the basis that the subsequent state court decision on the merits of plaintiff's constitutional claims precluded further litigation of the issues in federal court. The panel stated that it was required to give the same preclusive effect to a California Court of Appeal's judgment involving plaintiff's claims as California courts would. The panel determined that given the Court of Appeal's thorough and well-reasoned opinion, which

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

addressed each of plaintiff's constitutional challenges, there was no question that the constitutional claims were necessarily decided in the state court proceeding.

## COUNSEL

Harold J. Cassidy (argued), Joseph Zakhary, and Thomas J. Viggiano, The Cassidy Law Firm, Shrewsbury, New Jersey; Michael W. Caspino and Robert M. Dato, Buchalter Nemer, Irvine, California; for Plaintiffs-Appellants.

Daniel P. Barer (argued), Pollak Vida & Fisher, Los Angeles, California, for Defendants-Appellees Cynthia Anne Harding, M.P.H.; Jeffery D. Gunzenhauser, M.D., M.H.P.; and Dean C. Logan.

Robert R. Walmsley (argued) and Marlea F. Jarrette, Jarette & Walmsley LLP, Los Olivos, California, for Defendant-Appellee C.M.

Chara L. Crane (argued), Deputy Attorney General; Jennifer M. Kim, Supervising Deputy Attorney General; Julie Weng-Gutierrez, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Los Angeles, California; for Defendants-Appellees Edmund G. Brown, Jr. and Karen Smith, M.D., M.P.H.

Dean Masserman, Vorzimer/Masserman – Fertility & Family Law Center, Woodland Hills, California, for Defendants-Appellees Kaiser Foundation Hospital, Panorama City Medical Center, and Payman Roshan.

# OPINION

REINHARDT, Circuit Judge:

The California legislature enacted California Family Code Section 7962 ("Section 7962") to codify California cases that found gestational surrogacy contracts enforceable.[1] Among other matters, Section 7962 authorizes the judicial determination of legal parentage in accordance with the terms of a gestational surrogacy agreement prior to the birth of any child so conceived.

Melissa Cook entered into a gestational surrogacy agreement with C.M. pursuant to Section 7962. By the terms of the 75-page contract, titled "In Vitro Fertilization Surrogacy Agreement" ("Agreement"), Cook agreed to the implantation of embryos created with ova from an anonymous woman and sperm from C.M., to carry any pregnancy to term, and to surrender upon birth the child or children to C.M. Under the contract, Cook's parental rights would be terminated by court order prior to the birth of any child or children in accordance with Section 7962, and C.M. would be declared the only legal parent. Following the embryo transfer, Cook became pregnant, and eventually learned that she was carrying three fetuses. Cook's relationship with C.M. soured when they disagreed during her pregnancy about selective reduction of the fetuses. Triplets were born on February 22, 2016.

Prior to the birth, Cook began her legal quest to challenge the constitutionality of Section 7962. On January

---

[1] *See* Cal. Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1217 (2011–2012 Reg. Sess.) as amended April 26, 2011, at pp. 1–3; Cal. Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1217 (2011–2012 Reg. Sess.) as amended June 11, 2012, at p. 4.

4, 2016, she filed a complaint in the Los Angeles County Superior Court alleging that Section 7962 was unconstitutional and seeking a parentage declaration. The court struck this complaint because it was filed in the wrong court and without proper service. On January 6, 2016, C.M. filed a petition in the Children's Court within the Los Angeles County Superior Court to enforce the contract and be declared the sole legal parent of the children. On February 1, 2016, Cook filed a counterclaim in response to C.M.'s petition, again challenging the validity of the Agreement and the constitutionality of Section 7962. The following day, she filed a nearly identical complaint in federal district court against C.M. as well as state and county personnel, raising her constitutional claims under 42 U.S.C § 1983. The district court abstained pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and dismissed the case. *Cook v. Harding*, 190 F. Supp. 3d 921, 938 (C.D. Cal. 2016). Cook appealed.

## DISCUSSION

"We review a district court's decision to abstain under *Younger* de novo and do not defer to the view of the district judge." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017). We conduct the *Younger* analysis "in light of the facts and circumstances existing at the time the federal action was filed." *Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 881 n.6 (9th Cir. 2011).

"We may affirm the district court on any ground[] supported by the record." *Schechner v. KPIX-TV*, 686 F.3d 1018, 1022–23 (9th Cir. 2012).

### I.  *Younger* Abstention

"*Younger* 'abstention remains an extraordinary and narrow exception to the general rule that federal courts "have

no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."'" *Nationwide*, 873 F.3d at 727 (quoting *Potrero Hills*, 657 F.3d at 882 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989) ("*NOPSI*"))). Abstention in civil cases "is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (citing *Sprint Commc'ns., Inc. v. Jacobs*, 134 S. Ct. 584, 593–94 (2013)).

At issue is the second prong of the *ReadyLink* test: whether this case falls within either of the two types of civil cases—quasi-criminal enforcement actions or cases involving a state's interest in enforcing the orders and judgments of its courts—in which *Younger* abstention is appropriate. The district court ignored Supreme Court precedent and our circuit's controlling law when it abstained without conducting this required analysis. *See Cook*, 190 F. Supp. 3d at 934–38. Instead, it relied on previous applications of *Younger* abstention to family law cases and the state's unique interest and sole jurisdiction in the law of domestic relations. *See id.* We write to clarify that *Younger* abstention is improper in civil cases outside of the two limited categories referred to above, regardless of the subject matter or the importance of the state interest.

We explained in *ReadyLink* that the extension of *Younger* began shortly after that case was decided. *See* 754 F.3d at 758. This steady expansion included the application of *Younger* abstention to family law cases.

*Moore v. Sims*, 442 U.S. 415, 435 (1979) (abstaining from constitutional challenge to state custody removal proceedings); *see also, e.g.*, *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613–14 (9th Cir. 2000) (abstaining where plaintiff sought injunction to vacate child custody determinations). As the class of cases in which federal courts abstained pursuant to *Younger* continued to grow, at least some eminent jurists objected that this thwarted the federal courts' "virtually unflagging obligation," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), to exercise the jurisdiction vested in them by Congress. *See, e.g.*, *Juidice v. Vail*, 430 U.S. 327, 343–44 (1977) (Brennan, J., dissenting) ("It stands the § 1983 remedy on its head to deny the § 1983 plaintiff access to the federal forum . . . . Rather than furthering principles of comity and our federalism, forced federal abdication in this context undercuts . . . the protection and vindication of important and overriding federal civil rights . . . .").

After more than forty years of unchecked doctrinal expansion, the Supreme Court changed course and made clear that *Younger* abstention was appropriate only in the two "exceptional" categories of civil cases it had previously identified: (1) "civil enforcement proceedings"; and (2) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 134 S. Ct. at 591 (quoting *NOPSI*, 491 U.S. at 368). Our circuit soon adapted our law to comply with this holding. We explained that *Sprint* resolved any "interpretive dilemmas" about the types of proceedings to which *Younger* applies when it "squarely" held that abstention in civil cases is limited to these two categories. *See ReadyLink*, 754 F.3d at 759. Other circuits have done the same. *See, e.g.*, *Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017); *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th

Cir. 2016); *Banks v. Slay*, 789 F.3d 919, 923 (8th Cir. 2015); *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 189, 191–93 (1st Cir. 2015); *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty.*, 805 F.3d 425, 427–28 (2d Cir. 2015); *Mulholand v. Marion Cty. Election Bd.*, 746 F.3d 811, 815–16 (7th Cir. 2014); *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 129, 132–38 (3d Cir. 2014).

We emphasize that federal courts cannot ignore *Sprint*'s strict limitations on *Younger* abstention simply because states have an undeniable interest in family law. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004); *see also Moore*, 442 U.S. at 435. *Sprint* gave us cause to once more "believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum." *Zwickler v. Koota*, 389 U.S. 241, 248 (1967) (citation omitted). Indeed, the law of domestic relations often has constitutional dimensions properly resolved by federal courts. *See, e.g.*, *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015); *Loving v. Virginia*, 388 U.S. 1 (1967). We must enforce the mandated constraints on abstention so that such constitutional rights may be vindicated.

This case does not fall within either category of civil cases which *Sprint* held warrant *Younger* abstention. 134 S. Ct. at 593–94; *ReadyLink*, 754 F.3d at 759. First, Cook's state court constitutional challenge to Section 7962 is not a civil enforcement proceeding. In *Sprint*, the Court explained that civil enforcement proceedings are generally "akin to a criminal prosecution" in "important respects":

> Such enforcement actions are characteristically initiated to sanction the

> federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

134 S. Ct. at 592 (internal citations omitted). *Sprint* cited *Moore* as an example of a quasi-criminal enforcement action. *Id.* In *Moore*, parents challenged the constitutionality of parts of the Texas Family Code that permitted removal of their children following allegations of child abuse. *See* 442 U.S. at 418–20. Prior to the parents' action, the state had initiated proceedings alleging child abuse, leading to an investigation and subsequent custody hearings. *See id*. Although this case, like *Moore*, involves a constitutional challenge to a state family law scheme, none of the characteristics of an enforcement proceeding exemplified in *Moore* are present here.

Defendants nonetheless argue that the state court proceedings are "a civil enforcement proceeding brought by C.M. to enforce the terms of a properly executed assisted reproduction agreement." We have squarely foreclosed this broad interpretation of an enforcement proceeding: "If the mere 'initiation' of a judicial . . . proceeding were an act of civil enforcement, *Younger* would extend to every case in which a state judicial officer resolves a dispute between two private parties." *ReadyLink*, 754 F.3d at 760. The interpretation of a provision of the California Family Code also does not transform this into a civil enforcement proceeding because "litigants request that a court . . . interpret a statute, a regulation, or the common law" in most every case. *Id.*

Second, Cook's state action is not within the category of cases that involve "the State's interest in enforcing the orders and judgments of its courts." *ReadyLink*, 754 F.3d at 759 (citations omitted). Defendants contend that the case falls within this category because challenges to parentage determinations could impede the state courts' ability to make other decisions based on that parental status, such as custody and child support. This is an argument regarding the state courts' power to apply its laws in subsequent proceedings and the state's interest in its interrelated family laws. It does not relate to the state courts' ability to enforce compliance with judgments already made. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13–14 (1987) (abstaining from challenge to state court's procedures regarding bonds on appeal after entry of a monetary judgment); *Juidice*, 430 U.S. at 336 (abstaining from challenge to state court's civil contempt process).

Following *Sprint*, we have made clear that the category of cases involving the state's interest in enforcing its courts' orders and judgments does not include cases involving "a 'single state court judgment' interpreting [a private agreement] and state law" because such cases do not implicate "the process by which a state 'compel[s] compliance with the judgments of its courts.'" *ReadyLink*, 754 F.3d at 759 (quoting *Potrero Hills*, 657 F.3d at 886). Cook does not question the *process* by which California courts compel compliance with parentage determinations under state law. Rather, she alleges that Section 7962 is unconstitutional. Cook accordingly challenges the legislative prescriptions of Section 7962. As the Court held even before *Sprint*, *Younger* does not "require[] abstention in deference to a state judicial proceeding reviewing legislative . . . action." *NOPSI*, 491 U.S. at 368.

This case does not fall within the two limited categories of civil cases that "define *Younger*'s scope." *Sprint*, 134 S. Ct. at 591. The district court thus was wrong to abstain.

## II. Preclusion

We may not consider events after the filing of the complaint for purposes of our *Younger* analysis, *Potrero Hills*, 657 F.3d at 881 n.6, but we must consider subsequent developments for purposes of preclusion, *see ReadyLink*, 754 F.3d at 760–61. Here, the subsequent state court decision on the merits of Cook's constitutional claims precludes further litigation of these issues in federal court. On February 9, 2016—just one week after Cook filed her complaint in federal court—the Children's Court denied Cook's counterclaim to C.M.'s parentage petition, which included her constitutional claims. Cook appealed to the California Court of Appeal, which affirmed in a published opinion on January 26, 2017. *C.M. v. M.C.*, 213 Cal. Rptr. 3d 351 (Ct. App. 2017). The California Supreme Court denied review, and the Supreme Court denied certiorari, *M.C. v. C.M.*, 138 S. Ct. 239 (2017), cert. denied.

We must give the same preclusive effect to the California Court of Appeal's judgment as California courts would. *Gonzales v. Cal. Dep't of Corrs.*, 739 F.3d 1226, 1230–31 (9th Cir. 2014). "Issue preclusion 'bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim.'" *ReadyLink*, 754 F.3d at 760 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). California's test for issue preclusion has five threshold requirements:

> First, the issue sought to be precluded from relitigation must be identical to that decided

in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Id.* at 760–61 (quoting *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990) (in bank)).

Cook does not and could not credibly argue that the issues in the two proceedings are different; the factual allegations she made in both state and federal court are almost identical in the literal sense of the word. *See Hernandez v. City of Pomona*, 207 P.3d 506, 514 (Cal. 2009) ("The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." (quoting *Lucido*, 795 P.2d at 1225)). Nor does Cook dispute the finality of the Court of Appeal's opinion or that she was a party in the state court proceeding. Instead, her arguments against issue preclusion appear to be directed at the second and third requirements: whether the issues were actually litigated and necessarily decided in the state court proceeding.

In the context of issue preclusion, an issue is actually litigated "[w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *People v. Sims*, 651 P.2d 321, 331 (Cal. 1982) (quoting Rest. 2d, Judgments (1982) § 27, com. d, p. 255); *see also Hernandez*, 207 P.3d at 514. To be necessarily

decided, California law requires "only that the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding." *Lucido*, 795 P.2d at 1226. The two requirements are therefore interrelated. Inasmuch as an issue was necessarily decided in a prior proceeding, it was also actually litigated. *See In re Baldwin*, 249 F.3d 912, 919 (9th Cir. 2001); *see also In re Harmon*, 250 F.3d 1240, 1248 n.9 (9th Cir. 2001) (explaining that the converse proposition is not true).

Cook's position is that her constitutional claims "have never been directly addressed and decided." This is baseless in light of the Court of Appeal's thorough and well-reasoned opinion, which devotes over eight pages to addressing each of her constitutional challenges in turn. *See C.M.*, 213 Cal. Rptr. 3d at 363–70. The relevant section of the opinion begins with the heading "[Cook]'s Constitutional Challenges Fail." *Id.* at 363. After finding that Cook had standing, the Court of Appeal explicitly proceeded to the merits of her constitutional claims, *id.* at 366 ("We therefore proceed to the merits of [Cook]'s constitutional claims."), and finally concluded "that the Agreement did not violate the constitutional rights of [Cook] or the children," *id.* at 370. On the basis of this language and the Court of Appeal's analysis, there is no question that any and all constitutional claims were necessarily decided in the state court proceeding.

Cook nevertheless insists that the Court of Appeal did not decide her claims because it relied upon prior California cases that were decided on public policy rather than constitutional grounds. She argues that because the cited precedent did not address or decide all of the constitutional issues she raised, the Court of Appeal's decision is likewise limited and engaged in no further, independent analysis. We

need not parse Cook's reading of the earlier California cases. Whether the Court of Appeal relied on cases that addressed only public policy considerations or on no cases at all, it still had the authority to decide Cook's constitutional claims, *see* Cal. Const. Art. 6, §§ 1, 3; *see also, e.g.*, *Schmoll v. Chapman Univ.*, 70 Cal. App. 4th 1434, 1436 (1999) (deciding establishment and free exercise issues of first impression); *People v. Bye*, 116 Cal. App. 3d 569, 573 (1981) (deciding due process issue of first impression); *In re David G.*, 93 Cal. App. 3d 247, 250 (1979) (deciding equal protection issue of first impression), and it unequivocally decided them here. Moreover, it squarely addressed this exact argument:

> [W]e are not persuaded by [Cook]'s assertion that "the public policy considerations raised in [*Johnson v. Calvert*, 851 P.2d 776 (Cal. 1993) (in bank)] are not applicable to a constitutional challenge." We do not believe that our Supreme Court would have held that the surrogacy contract in *Calvert* was consistent with public policy if it believed that the surrogacy arrangement violated a constitutional right.

*C.M.*, 213 Cal. Rptr. 3d at 370 n.14; *see also id.* at 368 n.12. Throughout its lengthy opinion, the Court of Appeal acknowledged the limits of *Calvert* before extending *Calvert*'s reasoning to Cook's claims and completing its own constitutional analysis. *See id.* at 367–70. We thus find that all of Cook's constitutional claims were necessarily decided as well as actually litigated.

If the threshold requirements of issue preclusion are met, a court must consider "whether preclusion would be

consistent with the 'preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.'" *ReadyLink*, 754 F.3d at 761 (quoting *Lucido*, 795 P.2d at 1227). Preclusion in this case furthers these "public policies underlying the doctrine." *Lucido*, 795 P.2d at 1226. Giving the Court of Appeal's opinion preclusive effect is in the interest of both comity and consistency. *See id.* at 1229. It preserves judicial resources by ending this two-year set of proceedings in which Cook chose to litigate her identical claims simultaneously in two forums. Finally, Cook's pursuit of her constitutional claims may not have been "baseless or unjustified," *see id.* at 1232, but the legally irrelevant and deeply disparaging allegations about C.M's ability, intellect, and socioeconomic status throughout her pleadings are wholly inappropriate. For these reasons, we decline to "tackle anew the precise legal issue[s] resolved by the California Court of Appeal." *ReadyLink*, 754 F.3d at 762.

## CONCLUSION

The district court was wrong to abstain pursuant to *Younger*. Notwithstanding this error, we **AFFIRM** the dismissal of the complaint because the California Court of Appeal's decision precludes further litigation of Cook's constitutional claims.