**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD LEE RYNEARSON III,
        *Plaintiff-Appellant*,

    v.

ROBERT FERGUSON, Attorney
General of the State of
Washington; TINA R. ROBINSON,
Prosecuting Attorney for Kitsap
County,
        *Defendants-Appellees.*

No. 17-35853

D.C. No.
3:17-cv-05531-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted July 12, 2018
Seattle, Washington

Filed September 7, 2018

Before: Richard R. Clifton and Jacqueline H. Nguyen,
Circuit Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Clifton

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

# SUMMARY[**]

---

### Civil Rights

The panel reversed the district court's dismissal, on abstention grounds, of plaintiff's complaint seeking to enjoin enforcement of Washington's cyberstalking law and to obtain a declaratory judgment that the law is unconstitutional.

Plaintiff was the respondent in a Washington state court protection order proceeding filed by a person who lived near plaintiff and who was the subject of plaintiff's multiple online postings. Based on the allegations of stalking, cyberstalking and harassment, the state court entered a temporary stalking protection order against plaintiff. While the state court proceedings were pending, plaintiff filed a federal action which sought to enjoin enforcement of Washington's cyberstalking statute, Wash. Rev. Code § 9.61.260(1)(b).

The panel held that the Washington state stalking protection order proceedings against plaintiff did not fit into the narrow category of state cases in which federal abstention was appropriate under *Younger v. Harris*, 401 U.S. 37 (1971). The state proceedings were not quasi-criminal enforcement actions and did not involve the state's interest in enforcing the orders and judgments of its courts. Additionally, the panel held that *Younger* was not appropriate because plaintiff's federal constitutional challenge to the cyberstalking statute would not have the practical effect of enjoining the state proceedings. The panel noted that the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

state court protection order was not based solely on the crime of cyberstalking, but also on a finding that plaintiff had committed stalking and unlawful harassment. Therefore, the declaratory judgment and injunction that plaintiff sought in the federal proceedings would not have prevented the municipal court from issuing a stalking protection order. The panel further concluded that the stalking protection orders issued by the state court and the cyberstalking statute covered different conduct and that even if the state were enjoined from enforcing the criminal cyberstalking law, plaintiff could still have been charged with violating the protection order. The panel remanded for further proceedings.

## COUNSEL

Taylor de Laveaga (argued), Certified Law Student; Eugene Volokh (argued), Supervising Attorney; Scott and Cyan Banister First Amendment Clinic, UCLA School of Law, Los Angeles, California; Venkat Balasubramani, Focal PLLC, Seattle, Washington; for Plaintiff-Appellant.

Callie A. Castillo (argued), Deputy Solicitor General; Robert Ferguson, Attorney General; Office of the Attorney General, Olympia, Washington; for Defendants-Appellees.

**OPINION**

CLIFTON, Circuit Judge:

This appeal calls on us to consider the scope of federal court abstention under *Younger v. Harris*, 401 U.S. 37 (1971). In particular, we consider whether federal courts should abstain from exercising jurisdiction over a constitutional challenge to a state criminal statute while there are ongoing state court protection order proceedings arguably related to the challenge to the criminal statute. In the circumstances of this case, we conclude that abstention is not appropriate.

Plaintiff-Appellant Richard Rynearson III was named as the respondent in a Washington state court protection order proceeding filed by someone who lived near Rynearson and who was the subject of multiple online postings by Rynearson. Based on allegations that Rynearson had stalked, cyberstalked, and harassed the person seeking the protection order, the state municipal court entered a temporary stalking protection order against Rynearson. While those proceedings were pending in state court, Rynearson filed an action in federal court which sought to enjoin enforcement of Washington's cyberstalking law and to obtain a declaratory judgment that the law is unconstitutional. The federal action named two defendants: the Attorney General of Washington, Robert Ferguson, and the Kitsap County Prosecuting Attorney, Tina R. Robinson, the Defendants-Appellees in this appeal.

The district court dismissed Rynearson's complaint based on *Younger* abstention. In *Younger* and subsequent cases, the Supreme Court held that federal courts should abstain from exercising jurisdiction in exceptional circumstances when

state proceedings are ongoing. Rynearson appeals the dismissal. Because we conclude that the state protection proceedings do not present the exceptional circumstances that warrant abstention, we reverse the district court's dismissal of Rynearson's complaint and remand for further proceedings.

## I. Background

Rynearson, who sometimes uses the name Richard Lee, regularly posts online about civil liberties issues. In his words, he has "tried to raise awareness of the erosion of civil liberties, and the expansion of executive power, related to the war on terror." He began that effort while serving in the Air Force. Upon retiring from the service, Rynearson moved to Bainbridge Island, Washington, in 2016. He had already become interested in the role of Bainbridge Island in the internment of Japanese-Americans during World War II. Even before moving there, he began to follow the work of the Bainbridge Island Japanese-American Exclusion Memorial. Clarence Moriwaki, a private citizen, was the volunteer founder of the memorial and a member of its board. In November 2016, Rynearson became Facebook friends with Moriwaki.

Rynearson believed that a provision in the National Defense Authorization Act of 2012 ("the NDAA") would permit indefinite detention of American citizens. Through regular posts on public Facebook pages, Rynearson began to criticize Moriwaki and other local leaders who failed to vocally condemn the NDAA. In January and February 2017, Rynearson posted numerous comments on Facebook and sent text messages to Moriwaki criticizing him for failing to express disapproval of public officials who supported the

NDAA. Moriwaki told Rynearson that he felt harassed and asked Rynearson to stop communicating with him and posting about him. Moriwaki lived approximately 300 feet from Rynearson's residence. Despite Moriwaki's request, Rynearson continued posting his critical comments on Moriwaki's Facebook page. Moriwaki then blocked Rynearson from posting on his Facebook page. Rynearson responded by creating a Facebook group initially called "Clarence Moriwaki of Bainbridge Island," where he posted memes criticizing Moriwaki. Rynearson ultimately renamed the page "Not Clarence Moriwaki of Bainbridge Island."

In March 2017, Moriwaki sought and obtained from the Bainbridge Island Municipal Court a temporary stalking protection order against Rynearson. This order compelled Rynearson to "remove public webpages/Facebook page with [Moriwaki's] name" and prohibited him from, among other things, having any contact with Moriwaki, keeping Moriwaki under surveillance, going within 100 feet of Moriwaki's residence or workplace, and attending events at which Moriwaki was present. In June 2017, in response to an inquiry by Rynearson's attorney, the state prosecutor said that he was not planning to file criminal charges against Rynearson at that time in the hope that Rynearson would comply with the protection order but that the prosecutor would revisit that decision if he received any future referrals.

On July 10, 2017, Rynearson filed a response in the municipal court opposing Moriwaki's petition for a permanent protection order. In this response, Rynearson included a challenge to the constitutionality of Washington's cyberstalking statute, Wash. Rev. Code § 9.61.260(1)(b). In relevant part, the statute provides:

> (1) A person is guilty of cyberstalking if he or she, with intent to harass, intimidate, torment, or embarrass any other person, and under circumstances not constituting telephone harassment, makes an electronic communication to such other person or a third party: . . .
>
> > (b) Anonymously or repeatedly whether or not conversation occurs . . . .

Wash. Rev. Code. § 9.61.260.

On July 17, 2017, the municipal court granted Moriwaki a permanent protection order against Rynearson. The court concluded that Moriwaki had shown by a preponderance of the evidence that Rynearson had stalked, cyberstalked, and unlawfully harassed him. The court rejected Rynearson's claim that his actions were protected by the First Amendment. The permanent protection order prohibited Rynearson from coming within 300 feet of Moriwaki's residence or workplace, forbade him from attending public events with Moriwaki, and prohibited Rynearson "from creating or maintaining internet websites, Facebook pages, blogs, forums, or other online entities that use the name or personal identifying information of [Moriwaki] in the title or domain name. [Rynearson] may not use the photograph of [Moriwaki] to create memes, posters, or other online uses."

Rynearson appealed the protection order. In January 2018 the Kitsap County Superior Court vacated the permanent protection order on the grounds that Rynearson's speech was protected by the First Amendment. The court did not rule on

the constitutionality of the cyberstalking statute. Moriwaki did not appeal this judgment.

In the meantime, while the permanent protection order proceeding was pending before the municipal court, Rynearson initiated the current federal action by filing his complaint in the district court challenging the constitutionality of Washington's cyberstalking statute under 42 U.S.C. § 1983. The complaint was filed on July 11, 2017, one day after Rynearson filed his opposition to the protection order in the municipal court and six days before that court held a hearing and issued the permanent protection order. In the federal action Rynearson sought a permanent injunction enjoining defendants from enforcing the statute and a declaratory judgment that the statute is unconstitutional.

Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion on the ground that the federal court should abstain under *Younger*. Rynearson appeals.

## II. Discussion

We review a district court's *Younger* abstention determination de novo. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014). We conduct the *Younger* analysis "in light of the facts and circumstances existing at the time the federal action was filed." *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 881 n.6 (9th Cir. 2011).

In *Younger*, the Supreme Court held that federal courts should abstain from granting equitable relief as to the validity

of state criminal statutes when parallel criminal proceedings are ongoing in state court. 401 U.S. at 41. To do otherwise, the Court concluded, would be "a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Id.* The Court subsequently extended *Younger* abstention to a limited category of state civil cases. *See, e.g.*, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975) (applying *Younger* abstention to a federal suit that interfered with an ongoing state nuisance proceeding); *Juidice v. Vail*, 430 U.S. 327, 335 (1977) (applying *Younger* abstention to a federal suit that interfered with state contempt procedures); *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–37 (1982) (applying *Younger* abstention to a federal suit that interfered with state bar disciplinary proceedings). Both the Supreme Court and our court have repeatedly emphasized, however, that *Younger* abstention is "an extraordinary and narrow exception to the general rule that federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Potrero Hills*, 657 F.3d at 882 (internal quotation marks omitted).

With that directive in mind, we have developed a five-prong test to determine when *Younger* abstention should apply to a civil case. Specifically, "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink*, 754 F.3d at 759. If these four threshold elements are established, we then consider a fifth prong: (5) "whether the federal action would have the practical effect of enjoining the state proceedings

and whether an exception to *Younger* applies." *Id.* Each of these requirements must be "strictly met." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007).

Only the second and fifth prongs of this test are at issue in this case. We discuss each in turn.

>    *A. Prong Two: The State Proceeding Is Not Quasi-Criminal and Does Not Involve the State's Interest in Enforcing Court Orders*

Rynearson argues that the district court erred in applying *Younger* abstention because state protection order proceedings are not quasi-criminal enforcement actions and do not involve the state's interest in enforcing the orders and judgments of its courts. We agree.

In *Sprint Communications, Inc. v. Jacobs*, the Supreme Court summarized much of its precedent on the nature of quasi-criminal civil enforcement actions:

>    Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. *See, e.g.*, *Middlesex*, 457 U.S., at 433–34 (state-initiated disciplinary proceedings against lawyer for violation of state ethics rules). In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (state-initiated administrative proceedings to

enforce state civil rights laws); *Moore v. Sims*, 442 U.S. 415, 419–20 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents); *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (civil proceeding "brought by the State in its sovereign capacity" to recover welfare payments defendants had allegedly obtained by fraud) . . . . Investigations are commonly involved, often culminating in the filing of a formal complaint or charges. *See, e.g.*, *Dayton*, 477 U.S., at 624 (noting preliminary investigation and complaint); *Middlesex*, 457 U.S., at 433 (same).

571 U.S. 69, 79–80 (2013) (parallel citations omitted).

The district court concluded that protection order proceedings meet this standard because they are "akin to criminal prosecutions." But protection order proceedings in Washington are different from the enforcement actions discussed in *Sprint*. Under Washington law, a court may issue a protection order if it "finds by a preponderance of the evidence that the petitioner has been a victim of stalking conduct by the respondent." Wash. Rev. Code § 7.92.100(1)(a). This "petitioner" is a private party, not the state or local government. In Rynearson's case it was Moriwaki. The law does not require state authorities to conduct any investigation or file charges or a complaint in connection with an application for a protection order, and state actors are not party to the protection proceedings. Indeed, the stalking protection order statute specifically provides that a petitioner is not required to report the stalking conduct to the police to obtain a protection order. *See* Wash.

Rev. Code § 7.92.100(b) ("The petitioner shall not be denied a stalking protection order . . . because the petitioner did not report the stalking conduct to law enforcement."). In Rynearson's case, the state prosecutor's decision not to file criminal charges against Rynearson for his conduct did not bear on the municipal court's decision to grant Moriwaki a permanent protection order.

Furthermore, the purpose of Washington state stalking protection orders is not to "sanction" a party "for some wrongful act." *Sprint*, 571 U.S. at 79. Although a petitioner cannot receive a protection order unless the respondent has engaged in a wrongful act, the primary purpose of the order is to protect the petitioner, not punish the respondent. This is clear from the introduction to Washington's stalking protection statute:

> Victims who do not report the crime still desire safety and protection from future interactions with the offender. Some cases in which the stalking is reported are not prosecuted. In these situations, the victim should be able to seek a civil remedy requiring that the offender stay away from the victim.

Wash. Rev. Code § 7.92.010.

To be sure, the stalking protection order statute makes reference to state criminal statutes. "Stalking conduct" is defined to include any act of stalking as defined under Washington Revised Code section 9A.46.110 or any act of cyberstalking as defined under Washington Revised Code

section 9.61.260. Wash. Rev. Code § 7.92.020(3).[1] Conduct in violation of those specified criminal statutes may be a basis on which a state court may grant a protection order, but that is not the only basis on which a protection order may be granted. More broadly, the mere fact that the protection order law refers to criminal statutes does not mean that protection order proceedings are quasi-criminal. As the Supreme Court noted in *Sprint*, "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." 571 U.S. at 72.

---

[1] "Stalking conduct" means any of the following:

    (a) Any act of stalking as defined under [Wash. Rev. Code] § 9A.46.110;

    (b) Any act of cyberstalking as defined under [Wash. Rev. Code] § 9.61.260;

    (c) Any course of conduct involving repeated or continuing contacts, attempts to contact, monitoring, tracking, keeping under observation, or following of another that:

    (i) Would cause a reasonable person to feel intimidated, frightened, or threatened and that actually causes such a feeling;

    (ii) Serves no lawful purpose; and

    (iii) The stalker knows or reasonably should know threatens, frightens, or intimidates the person, even if the stalker did not intend to intimidate, frighten, or threaten the person.

Wash. Rev. Code § 7.92.020(3).

Washington stalking protection proceedings do not reflect any of the characteristics described in *Sprint*. Those proceedings are not quasi-criminal enforcement actions for *Younger* purposes.

Nor do the protection proceedings "involve a state's interest in enforcing the orders and judgments of its courts." *ReadyLink*, 754 F.3d at 759. The Supreme Court and our court have held that this standard is geared to ensuring that federal courts do not interfere in the procedures by which states administer their judicial system and ensure compliance with their judgments. This standard derives primarily from the Supreme Court's decisions in *Juidice* and *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987). In *Juidice*, the Court held that *Younger* abstention applied to a federal suit that sought to enjoin the use of state statutory contempt procedures because "[t]he contempt power lies at the core of the administration of a State's judicial system." 430 U.S. at 335. Similarly, in *Pennzoil* the Court held that *Younger* abstention applied to a federal suit challenging the constitutionality of state procedures that allowed judgment creditors to secure liens on all of a judgment debtor's real property. As the Court explained, "[t]his Court repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems." *Pennzoil*, 481 U.S. at 12–13. Further, "[b]oth *Juidice* and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained." *Id*. at 13–14 (footnote omitted).

We recently considered this standard in *Cook v. Harding*, 879 F.3d 1035 (9th Cir. 2018), *petition for cert. filed* (U.S. April 30, 2018) (No. 17-1487). In *Cook*, the plaintiff filed a federal suit challenging the constitutionality of a state statute, California Family Code section 7962, that "authorizes the judicial determination of legal parentage in accordance with the terms of a gestational surrogacy agreement." 879 F.3d at 1038. The plaintiff was party to a pending action in state court to enforce a surrogacy agreement when she filed her federal complaint. *Id.* We held that the state action did not involve the state's interest in enforcing the orders and judgments of its courts because

> Cook does not question the *process* by which California courts compel compliance with parentage determinations under state law. Rather, she alleges that Section 7962 is unconstitutional. Cook accordingly challenges the legislative prescriptions of Section 7962. As the Court held even before *Sprint*, *Younger* does not "require[] abstention in deference to a state judicial proceeding reviewing legislative . . . action."

*Id*. at 1041 (alterations in *Cook*) (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989)).

Here, Rynearson's challenge is solely to the constitutionality of a criminal statute. Although conduct in violation of that statute can be (and was, in Rynearson's case) a partial basis for issuing a protection order, the criminal statute's constitutionality does not bear on the validity of the state's protection orders or the procedures by which the state

courts issue or enforce them. We therefore conclude that Rynearson's suit did not involve Washington's interest in enforcing the orders and judgments of its courts.

### B. Prong Five: The Federal Suit Would Not Have the Practical Effect of Enjoining the State Protection Proceedings

Even if we were to decide that the state protection proceedings met the first four prongs described above, *Younger* abstention still would not be appropriate here because Rynearson's federal constitutional challenge to the cyberstalking statute would not "have the practical effect of enjoining the state proceedings." *ReadyLink*, 754 F.3d at 759.

Defendants argue that declaring the cyberstalking statute unconstitutional would have given Rynearson the means to stop the municipal court from continuing to apply the cyberstalking statute to Rynearson's conduct. That is not true. It would have been true that success in Rynearson's federal suit would have prevented state prosecutors from prosecuting Rynearson specifically for the crime of cyberstalking (which they ultimately decided not to do, anyway). But there is no basis to conclude that Rynearson's federal suit would have prevented the municipal court from granting Moriwaki a permanent protection order or prevented the state prosecutors from prosecuting Rynearson if he had violated the protection order.

Even if the cyberstalking statute were declared unconstitutional in federal court, the protection order was not based solely on the crime of cyberstalking. The stalking protection order statute clearly provides that the crime of

stalking and other forms of "stalking conduct" can be the basis for a protection order; cyberstalking is not required. *See* Wash. Rev. Code §§ 7.92.020, 7.92.100. In Rynearson's case, the municipal court found by a preponderance of the evidence that Rynearson had committed both stalking and unlawful harassment in addition to cyberstalking. Therefore, the declaratory judgment and injunction that Rynearson sought in the federal proceedings would not have prevented the municipal court from issuing a stalking protection order against Rynearson.

Nor would Rynearson's federal suit have blocked the state's ability to prosecute Rynearson had he violated the protection order. The stalking protection orders issued by the municipal court and the cyberstalking statute covered different conduct. The cyberstalking statute criminalizes repeated or anonymous electronic communications made "with intent to harass, intimidate, torment, or embarrass." Wash. Rev. Code § 9.61.260(1). The protection orders issued by the municipal court, on the other hand, prohibited Rynearson from, among other things, attending events with Moriwaki, contacting Moriwaki, and creating websites that used Moriwaki's name. Rynearson could have engaged in conduct prohibited by the orders but not criminalized under the challenged cyberstalking statute. Even if the state were enjoined from enforcing the criminal cyberstalking law, Rynearson could have been charged with violating the protection order.

Moreover, even if the federal action did cast doubt on the validity of the terms of the stalking protection order, Rynearson still would not be able to use any federal determination about the cyberstalking statute's constitutionality as a defense in a contempt proceeding. A

party cannot use a challenge to the validity of a court order as a defense in a proceeding for violation of that order under Washington law. *See City of Seattle v. May*, 256 P.3d 1161, 1163–64 (Wash. 2011) (en banc).

Rynearson did not challenge the terms of the protection orders issued against him in his federal suit. Nor did he challenge the constitutionality of Washington's protection order statute or the statute under which he would be prosecuted if he were to violate the order. *See* Wash. Rev. Code § 26.50.110. Rynearson's federal suit would not have had the practical effect of enjoining the state protection order proceedings.

## III.    Conclusion

*Younger* abstention is a limited exception to the obligation of federal courts to hear cases within the scope of their jurisdiction. We conclude that the Washington state stalking protection order proceedings against Rynearson did not fit into the narrow category of state cases in which federal abstention was appropriate. We reverse the district court's dismissal of Rynearson's complaint and remand for further proceedings.

**REVERSED AND REMANDED.**