**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRISTOL-MYERS SQUIBB COMPANY; SANOFI-AVENTIS U.S. LLC; SANOFI US SERVICES INC., FKA Sanofi-Aventis US Inc.; SANOFI-SYNTHELABO LLC, *Plaintiffs-Appellants*, | No. 20-15515 D.C. No. 1:20-cv-00010-JAO-RT |
| v. | OPINION |
| CLARE E. CONNORS, in her official capacity as the Attorney General of the State of Hawaii, *Defendant-Appellee.* | |

Appeal from the United States District Court
for the District of Hawaii
Jill Otake, District Judge, Presiding

Argued and Submitted September 14, 2020
San Francisco, California

Filed October 29, 2020

Before: Paul J. Watford, Michelle T. Friedland, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Miller

# SUMMARY[*]

### *Younger* abstention

The panel affirmed the district court's dismissal of a lawsuit brought by several pharmaceutical companies seeking an injunction against state court litigation involving Plavix, a medication introduced to the market in 1997 to help prevent heart attacks and strokes.

In 2014, the State of Hawaii filed suit in state court against the pharmaceutical companies that produce Plavix alleging the companies knew that those with a certain genetic variation, a group that includes a significant portion of Hawaii's population, experience worse clinical outcomes when taking Plavix. The State asserted that the companies had intentionally concealed that fact in violation of Hawaii's statute prohibiting unfair or deceptive acts or practices in commerce. In January 2020, the companies turned to federal court to seek an injunction against the state proceeding which, they argued, violated their First Amendment rights. The district court dismissed the suit, concluding that *Younger v. Harris*, 401 U.S. 37 (1971), required it to abstain from exercising jurisdiction.

In affirming the district court, the panel held that even though the state proceeding was being litigated by private counsel, it was still an action brought by the State in its sovereign capacity. The panel held that what matters for *Younger* abstention is whether the state proceeding falls

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

within the general class of quasi-criminal enforcement actions—not whether the proceeding satisfies specific factual criteria. Looking to the general class of cases of which this state proceeding was a member, the panel concluded that *Younger* abstention was appropriate. The State's action was brought under a statute that punishes those who engage in deceptive acts in commerce, and the State sought civil penalties and punitive damages to sanction the companies for their allegedly deceptive labeling practices.

The panel rejected the companies' argument that a more intense scrutiny was warranted because First Amendment interests were at stake. The panel further held that the companies' First Amendment concerns did not bring this case within *Younger*'s extraordinary circumstances exception, which permits federal jurisdiction where the danger of irreparable loss is both great and immediate.

**COUNSEL**

Anand Agneshwar (argued), Arnold & Porter Kaye Scholer LLP, New York, New York; Daniel Pariser, Robert N. Weiner, and Sally L. Pei, Arnold & Porter Kaye Scholer LLP, Washington, D.C.; Paul Alston and Louise K. Ing, Dentons US LLP, Honolulu, Hawaii; for Plaintiffs-Appellants.

T.F. Mana Moriarty (argued), Bryan C. Yee, and James C. Paige, Deputy Attorneys General; Nicholas M. McLean, Deputy Solicitor General; Lawrence L. Tong, Senior Deputy

Attorney General; Department of the Attorney General, Honolulu, Hawaii; for Defendant-Appellee.

**OPINION**

MILLER, Circuit Judge:

After the State of Hawaii sued several pharmaceutical companies in state court for allegedly deceptive drug marketing, the companies turned to federal court, seeking an injunction against the state-court litigation. The federal district court dismissed the suit, concluding that *Younger v. Harris*, 401 U.S. 37 (1971), required it to abstain from exercising jurisdiction. We agree with the district court that the state-court litigation is a quasi-criminal enforcement proceeding and that *Younger* bars a federal court from interfering with such a proceeding. We therefore affirm.

This case involves Plavix, a medication introduced to the market in 1997 and used to help prevent heart attacks and strokes by inhibiting the formation of blood clots. In 2008, researchers reported that some people, particularly those of Asian or Pacific Islander descent, have a genetic variation in an enzyme involved in metabolizing Plavix, which may make the drug less effective. In 2014, the State of Hawaii filed suit in state court against the pharmaceutical companies that produce Plavix—Bristol-Myers Squibb Company, Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., and Sanofi-Synthelabo LLC. *See State ex rel. Louie v. Bristol-Myers Squibb Co.*, No. 14-1-0708-03 (Haw. 1st Cir. Ct. Mar. 19, 2014). The State alleged that the companies had known since 1998 that those with the genetic variation, a group that includes a significant portion of Hawaii's population, experienced worse clinical outcomes and that the companies

had intentionally concealed that fact in violation of Hawaii's statute prohibiting unfair or deceptive acts or practices in commerce. *See* Haw. Rev. Stat. § 480-2. Two private law firms conducted the initial investigation of the companies and brought the state-court action on behalf of the State on a contingency-fee basis.

In January 2020, nearly six years after the state-court litigation began, the companies turned to federal court to seek an injunction against the state proceeding, which, they argued, violated their First Amendment rights. The State moved to dismiss under *Younger*, and the district court granted the motion. We review the district court's decision to abstain under *Younger* de novo. *Gilbertson v. Albright*, 381 F.3d 965, 982 n.19 (9th Cir. 2004) (en banc).

The Supreme Court has held that, with just a few exceptions, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). One such exception is the abstention doctrine recognized in *Younger*, in which the Supreme Court relied on "the basic doctrine of equity jurisprudence that courts of equity should not act . . . to restrain a criminal prosecution," reinforced by considerations of comity, to hold that federal courts generally must abstain from enjoining a pending state criminal proceeding. 401 U.S. at 43–44. In later cases, that "concern for comity and federalism" led the Court to "expand the protection of *Younger* beyond state criminal prosecutions, to civil enforcement proceedings." *New Orleans Pub. Serv., Inc. v. Council of New Orleans* (*NOPSI*), 491 U.S. 350, 367–68 (1989); *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Court limited that expansion, holding that *Younger* abstention applies to only three categories of state proceedings: (1) "ongoing state criminal prosecutions"; (2) "certain 'civil enforcement proceedings'"; and (3) "'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Id.* at 78 (quoting *NOPSI*, 491 U.S. at 368). The Court described the type of civil enforcement proceedings to which *Younger* applies as those that are "'akin to a criminal prosecution' in 'important respects.'" *Id.* at 79 (quoting *Huffman*, 420 U.S. at 604). It described some of the characteristics of such proceedings as follows:

> Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

*Id.* at 79–80 (citations omitted).

In this case, the district court determined that *Younger* abstention was appropriate because the state proceeding at issue is "a civil enforcement action brought by the Attorney General seeking civil penalties, injunctive relief, and damages for unfair and deceptive acts in violation of Hawai'i consumer protection law." The companies challenge that conclusion, arguing that none of the characteristics of a civil enforcement action that the Court described in *Sprint* is present in this case.

First, the companies argue that the state-court litigation was not, in reality, brought by the State of Hawaii. In the companies' view, the State of Hawaii is not genuinely a party to the state-court litigation because the State's reliance on private counsel means that it is only a nominal plaintiff. But even though the state proceeding is being litigated by private counsel, it is still an action brought by the State—indeed, the first paragraph of the companies' federal complaint recognizes as much, alleging that "[t]he State of Hawai'i has sued the Companies."

An important principle of federalism is that it is up to "the people of the States to determine the qualifications of their government officials." *Gregory v. Ashcroft*, 501 U.S. 452, 463 (1991); *see Taylor v. Beckham*, 178 U.S. 548, 570–71 (1900) (describing the authority of States "to prescribe the qualifications of their own officers" as "obviously essential to the independence of the States"). Conducting litigation on behalf of a State is a core sovereign function, and the people of each State, through their elected representatives, have the right to decide whether that function should be carried out by full-time government employees or, as here, by outside counsel retained for a particular case. Thus, we have held that the Due Process Clause does not require a State to use state employees, rather than outside counsel, to bring a civil enforcement action. *American Bankers Mgmt. Co. v. Heryford*, 885 F.3d 629, 633–37 (9th Cir. 2018).

We see no reason why the application of *Younger* should turn on the State's choice of lawyers. *Cf. Trump v. Vance*, 941 F.3d 631, 638 n.10 (2d Cir. 2019) (concluding, in a federal suit seeking an injunction against an ongoing investigation of the President in state court, that the *Younger* analysis—specifically, the importance of the federal

interests at stake—was "unaltered by the fact that the President is represented by private counsel"), *aff'd*, 140 S. Ct. 2412 (2020). Here, the state-court case against the companies is one that, under Hawaii law, only the Attorney General or another state official may bring; it is not available to a private party. Haw. Rev. Stat. § 480-3.1. The Attorney General of Hawaii made the decision to bring the action, and the people of Hawaii may hold her accountable for that decision. The action is therefore one "brought by the State in its sovereign capacity." *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977). For purposes of *Younger*, it is an action in which a "state actor is . . . a party." *Sprint*, 571 U.S. at 79.

The companies next argue that we must employ a "rigorous inquiry" to determine "the true character of the underlying action" and whether it constitutes a civil enforcement action as described in *Sprint*. If we do, the companies assert, we will find that the state proceeding fails to qualify because private counsel conducted the bulk of the investigation and because the State's true motive in bringing the case is to make a profit, not to punish wrongdoing. That kind of case-specific inquiry finds no support in precedent.

In *Sprint*, the Supreme Court described the characteristics of quasi-criminal enforcement actions in general terms by noting features that are typically present, not in specific terms by prescribing criteria that are always required. Nothing in the Court's opinion suggests that the characteristics it identified should be treated as a checklist, every element of which must be satisfied based on the specific facts of each individual case. 571 U.S. at 79–80. Instead, the Court used terms such as "characteristically," "routinely," and "commonly" to describe the class of enforcement actions entitled to *Younger* abstention. *Id.* at 79.

And when evaluating whether the characteristics of actions entitled to *Younger* abstention are present, the Supreme Court has considered the nature of a State's interest in different classes of proceedings, not its interest in specific cases. *See, e.g.*, *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). In *NOPSI*, the Court explained that "when we inquire into the substantiality of the State's interest in its proceedings we do not look narrowly to its interest in the outcome of the particular case," but instead to "the importance of the generic proceedings to the State." 491 U.S. at 365 (emphasis omitted). So too here. What matters for *Younger* abstention is whether the state proceeding falls within the general class of quasi-criminal enforcement actions—not whether the proceeding satisfies specific factual criteria. For that reason, we agree with the First Circuit that "courts ordinarily should look to the general class of proceedings in determining whether *Younger* abstention applies." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 195 (1st Cir. 2015).

The case on which the companies principally rely, *Cook v. Harding*, 879 F.3d 1035 (9th Cir. 2018), does not support the proposition that we must conduct a case-specific inquiry into the nature of the state proceeding. In *Cook*, we concluded that a civil action brought by a private party to enforce a surrogacy agreement is not a proceeding to which *Younger* applies. We explained that a private contract action does not fall within *Sprint*'s two categories of civil cases entitled to abstention: It is neither a civil enforcement proceeding nor a civil proceeding involving a State's interest in enforcing the orders of its courts. *Id.* at 1040–41. While we noted that *Sprint* limited the categories of cases to which *Younger* applies, we did not hold that the Court had required any kind of elevated scrutiny of cases that fell within these categories. *Id.* at 1039. Instead, we considered whether the

general class of contract cases constituted civil enforcement proceedings, and we concluded that they did not. *Id.* at 1040–41. That is consistent with the approach we take today.

Accepting the companies' invitation to scrutinize the particular facts of a state civil enforcement action would offend the principles of comity at the heart of the *Younger* doctrine. The "underlying reason for restraining courts of equity" is the "notion of 'comity,' that is, a proper respect for state functions . . . and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. A federal-court inquiry into why a state attorney general chose to pursue a particular case, or into the thoroughness of the State's pre-filing investigation, would be entirely at odds with *Younger*'s purpose of leaving state governments "free to perform their separate functions in their separate ways." *Id*. It also would make the application of *Younger* turn on a complex, fact-intensive analysis, in tension with the Supreme Court's admonition that jurisdiction should be governed by "straightforward rules under which [courts] can readily assure themselves of their power to hear a case." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

Looking to the general class of cases of which this state proceeding is a member, we conclude that *Younger* abstention is appropriate here. The State's action has been brought under a statute that punishes those who engage in deceptive acts in commerce, and the State seeks civil penalties and punitive damages to sanction the companies for their allegedly deceptive labeling practices. On its face, the action fits comfortably within the class of cases described in *Sprint*, and abstention under *Younger* is

warranted. *See Williams v. Washington*, 554 F.2d 369, 370 (9th Cir. 1977).

Finally, asserting that the State is "using the threat of sky-high penalties" to force them to "take sides on matters of scientific dispute," the companies argue that their First Amendment interests are at stake, and that we must therefore subject the state-court proceedings to more intense scrutiny than might otherwise be warranted. But *Younger* abstention routinely applies even when important rights are at stake— indeed, without some claim that a prosecution affects federally protected rights, there would be no basis for federal jurisdiction in the first place, and thus nothing from which to abstain. *See, e.g.*, *Younger*, 401 U.S. at 51; *Huffman*, 420 U.S. at 610; *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 435–37. In *Younger* itself, for example, the plaintiffs argued that the state prosecution had a "chilling effect" on their exercise of First Amendment rights, but the Court declined to apply any heightened scrutiny on that basis. 401 U.S. at 51. Instead, it explained that "the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Id.*

The Supreme Court has stated that *Younger* does not apply in "extraordinary circumstances, where the danger of irreparable loss is both great and immediate." *Younger*, 401 U.S. at 45. That is a narrow exception, principally applying to "cases of proven harassment . . . by state officials in bad faith," and the companies have expressly disclaimed reliance on it. *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *Brown v. Ahern*, 676 F.3d 899, 901 (9th Cir. 2012). The companies' First Amendment concerns do not bring this case within the

scope of that exception, so they have no bearing on the application of *Younger*.

**AFFIRMED.**