**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JONATHAN DAVEILO DUKE,

*Petitioner-Appellant,*

v.

JOSIE GASTELO, Warden,

*Respondent-Appellee.*

No. 20-55787

D.C. No.
2:19-cv-04712-
AB-ADS

OPINION

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted October 19, 2022
Pasadena, California

Filed April 5, 2023

Before:  Andrew J. Kleinfeld, Morgan Christen, and Patrick
J. Bumatay, Circuit Judges.

Opinion by Judge Christen;
Dissent by Judge Bumatay

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's dismissal of California state prisoner Jonathan Duke's federal habeas corpus petition under 28 U.S.C. § 2254, reversed the district court's denial of Duke's motion to stay his federal proceedings, and remanded, in a case in which Duke is engaged in a resentencing proceeding under California Penal Code § 1172.6, which allows persons convicted of certain types of murder to petition for resentencing.

Duke filed the § 1172.6 petition in Superior Court one day after California enacted that statute. While his resentencing proceeding was ongoing, and 11 days before the expiration of the deadline for him to file for relief pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), Duke filed the federal habeas petition.

The district court denied Duke's unopposed motion to stay his habeas proceeding pending resolution of the § 1172.6 proceeding. Recognizing that Duke's petition presented only claims that had been fully exhausted in state court, the district court dismissed the petition without prejudice on the ground that *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), allows a stay of federal habeas proceedings only if a petition presents a mix of exhausted and unexhausted claims. The district court then *sua sponte*

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

dismissed the petition without prejudice based on the *Younger v. Harris*, 401 U.S. 37 (1971), abstention doctrine.

The panel explained that *Younger* is not implicated here. Although there is an ongoing state proceeding—the resentencing under § 1172.6 based on a change in state law—the federal petition in this case does not seek an injunction to prevent state officers from moving forward with the § 1172.6 proceeding. That proceeding is in substance a new case based on a new statute, and Duke seeks no relief that would interfere with it. By filing and moving to stay his federal petition until the state resentencing proceeding concludes, Duke sought to satisfy the statute of limitations and preserve his right to file one § 2254 petition arguing that the state courts' resolution of his federal constitutional claims was unreasonable. For purposes of this appeal, the salient point is that the State agrees there is no possibility the ongoing § 1172.6 proceeding will address Duke's constitutional claims; indeed, the state courts have already considered and rejected them.

The panel held that the denial of Duke's motion for a stay was also error because it was based on the misunderstanding that the district court lacked the authority to stay Duke's habeas petition. The district court was correct that a stay under *Kelly* and *Rhines v. Weber*, 544 U.S. 269 (2005), would not have been warranted in Duke's case because his habeas petition did not include any unexhausted claims. But as the State concedes, the fact that Duke's petition included only exhausted claims also meant there was no prospect that a stayed federal petition would interfere with the § 1172.6 proceeding. Moreover, the circumstances weighed heavily in favor of doing so: there was uncertainty whether the § 1172.6 petition would toll Duke's federal filing deadline because there is no controlling authority on that point and

the parties had not briefed the issue; only 11 days remained until Duke's AEDPA filing period ended; the State did not oppose Duke's request for a stay; and there was no possibility a stayed federal petition would interfere with the state resentencing proceeding.

The panel concluded that the dismissal of the habeas petition was error because the test for *Younger* was not satisfied, and that the denial of a stay constituted an abuse of discretion.

Judge Bumatay dissented. He wrote that the majority ignores Duke's multiple constitutional challenges in state courts, focusing myopically instead on the pending § 1172.6 proceedings. He wrote that *Younger* must apply whenever a plaintiff has an opportunity to raise his claims at any stage in the state-court proceedings, and Duke has had opportunity after opportunity to litigate his federal constitutional claims in California courts.

---

## COUNSEL

Fay Arfa (argued), Fay Arfa A Law Corporation, Los Angeles, for Petitioner-Appellant.

Idan Ivri (argued), Deputy Attorney General; Stephanie C. Brenan, Supervising Deputy Attorney General; Susan Sullivan Pithey, Senior Assistant Attorney General; Lance E. Winters, Chief Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General; Los Angeles, California; for Respondent-Appellee.

# OPINION

CHRISTEN, Circuit Judge:

In this appeal, we consider whether the *Younger* abstention doctrine requires dismissal of a state prisoner's federal habeas petition when the prisoner's direct appeal and state habeas proceedings have concluded, but the prisoner is engaged in proceedings pursuant to California Penal Code § 1172.6 (formerly § 1170.95), a statute that allows persons convicted of certain types of murder to petition for resentencing. *See Younger v. Harris*, 401 U.S. 37 (1971).

California state prisoner Jonathan Duke sought resentencing under § 1172.6 the day after California enacted that statute. While his resentencing proceeding was ongoing, and shortly before expiration of the deadline for Duke to file for relief pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA),[1] Duke filed a federal habeas petition. Among other things, his petition alleged that several forms of prosecutorial misconduct had occurred in his trial. A magistrate judge denied Duke's unopposed motion to stay his federal proceedings, and sua sponte recommended that the district court dismiss Duke's habeas petition without prejudice pursuant to *Younger*. The district court accepted the magistrate judge's recommendation that *Younger* abstention was warranted and required dismissal.

We respectfully disagree. Duke did not seek to enjoin or interfere with the § 1172.6 state-court proceeding, and because he cannot litigate his federal constitutional claims in that state-court action, the test for *Younger* abstention was

---

[1] *See* 28 U.S.C. § 2244(d)(1)(A).

not satisfied. We therefore conclude that *Younger* abstention was inappropriate and reverse the district court's order dismissing Duke's federal habeas petition.

## I.

Duke was convicted of committing first-degree murder for the benefit of a criminal street gang in 2013. He was sentenced in 2015. Duke appealed and concurrently filed a state habeas petition. In 2017, the California Court of Appeal denied Duke's habeas petition but partially reversed his conviction based on an erroneous jury instruction. The appellate court remanded Duke's case and directed that the prosecution either retry Duke for first-degree murder or accept a modification of the judgment to reflect a conviction for second-degree murder. Duke sought review from the California Supreme Court, which declined to review both his direct appeal and his state habeas petition.

On remand to the state trial court, the prosecution elected to proceed with a modified second-degree murder judgment and Duke was resentenced to an indeterminate term of fifteen years to life in prison. Duke again appealed to the California Court of Appeal, which affirmed the modified judgment. Duke did not seek review. Duke's conviction became final on June 10, 2018, when the time for him to seek review from the California Supreme Court expired. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); Fed. R. Civ. P. 6(a); Cal. R. Ct. 8.366(b)(1), 8.500(e)(1). This sequence of events left June 10, 2019 as Duke's deadline to file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A).

On January 1, 2019, approximately seven months after the clock began running on the one-year period for Duke to file a petition pursuant to 28 U.S.C. § 2254, a new California resentencing law became effective. California Penal Code §

1172.6 allows people convicted of felony murder or murder under the natural and probable consequences doctrine to petition for resentencing if they could not currently be convicted of those offenses due to a change in state law that provides "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." Cal. Penal Code § 188(a)(3). If a person is prima facie eligible for § 1172.6 relief, the sentencing court must hold a hearing to determine whether the conviction should be vacated. *Id.* § 1172.6(d)(1). At the hearing, the prosecution may rely on previously admitted evidence and has the burden to prove beyond a reasonable doubt that the petitioner is guilty of murder under current California law. *Id.* § 1172.6(b)–(d). The sentencing court must vacate the murder conviction and enter a new sentence if it determines that the petitioner is entitled to § 1172.6 relief. *Id.* § 1172.6(d). The new sentence cannot be greater than the initial sentence, and the petitioner must be given credit for time served. *Id.* § 1172.6(d)(1), (h).

Duke filed a § 1172.6 petition in Los Angeles Superior Court on January 2, 2019, one day after California's resentencing law became effective. The superior court did not rule on Duke's petition for several months.

On May 30, 2019, with only 11 days remaining until his original AEDPA filing deadline, Duke filed a federal habeas petition alleging that several forms of prosecutorial misconduct occurred at his trial, among other grounds for relief.[2] The state superior court denied Duke's resentencing

---

[2] The district court docket reflects that Duke filed his federal habeas petition on May 30, 2019, but the magistrate judge's Report and Recommendation states the filing date was June 18, 2019. This confusion likely occurred because the petition was attached as an exhibit

petition shortly thereafter, and Duke appealed to the California Court of Appeal.

Meanwhile, having met the AEDPA filing deadline in federal court, Duke filed a motion to stay his habeas proceedings pending resolution of his appeal in the § 1172.6 proceeding. The State did not oppose the stay, but the assigned magistrate judge denied the motion without prejudice. The judge recognized that Duke's petition presented only claims that had been fully exhausted in state court, and that *Kelly v. Small* allows a stay of federal habeas proceedings only if a petition presents a mix of exhausted and unexhausted claims. *See* 315 F.3d 1063, 1070 (9th Cir. 2003), *abrogated on other grounds by Pliler v. Ford*, 542 U.S. 225 (2004); *see also Rhines v. Weber*, 544 U.S. 269, 278 (2005). The magistrate judge advised Duke that if he renewed his request for a stay, he must "seek to amend the Petition to add any unexhausted claims." Duke did not have any unexhausted constitutional claims, and he did not renew his motion for a stay.

In April 2020, the magistrate judge issued a sua sponte order to show cause why Duke's petition should not be dismissed under the *Younger* abstention doctrine because the § 1172.6 appeal remained pending. Duke argued the *Younger* abstention doctrine did not apply because he had "exhausted all his issues," "[did] not wish to enjoin the state prosecution," and had in fact requested a stay of his federal habeas proceedings. He also argued that if the court dismissed his federal habeas petition, he might be time-

---

to the district court's June 18, 2019 order requiring a response to the petition. If the court consulted that version of the petition, the automatically generated CM/ECF header would have displayed June 18, 2019 as the filing date.

barred from filing another one because his original filing deadline had already passed. *See* 28 U.S.C. § 2244(d)(1)(A). The State filed a two-and-a-half-page response stating that *Younger* abstention was warranted.

The magistrate judge's Report and Recommendation (R&R) advised dismissing Duke's habeas petition without prejudice because it concluded all *Younger* abstention requirements were met. The recommendation reasoned that: (1) the state-court resentencing proceeding was ongoing when Duke filed his federal habeas petition; (2) the resentencing proceeding "implicate[d] an important state interest in enforcing criminal laws without federal interference"; (3) Duke "[did] not appear barred from litigating federal constitutional issues in his pending state proceeding for resentencing"; and (4) granting Duke the habeas relief he sought "would have the practical effect of enjoining the ongoing state resentencing proceeding." The R&R further concluded that *Younger* necessitated dismissal rather than the stay Duke had requested. The R&R observed that "AEDPA's one-year limitation period is tolled while a California Court considers an application for collateral review," but as Duke pointed out, there was no controlling authority resolving whether § 1172.6 proceedings constitute "collateral review" for purposes of tolling the federal limitations period. Neither the State nor the district court cited any authority resolving that issue. The R&R declined to opine on "whether [Duke] has satisfied AEDPA's statute of limitations of a hypothetical future federal habeas petition" and advised that Duke "should not delay in filing a future federal habeas petition" if his state appeal was unsuccessful. The district court accepted the R&R and denied a certificate of appealability. Duke appealed and our court granted a certificate of appealability, concluding that

Duke's petition "states at least one federal constitutional claim debatable among jurists of reason, namely whether the prosecutor committed misconduct in violation of appellant's right to due process."

Meanwhile, Duke's state § 1172.6 proceedings continued. The California Court of Appeal affirmed the superior court's denial of Duke's § 1172.6 petition, but the California Supreme Court granted review and remanded the petition to the Court of Appeal with instructions to vacate and reconsider its decision in light of a statutory amendment governing evidentiary hearings held pursuant to § 1172.6. The Court of Appeal determined that Duke was entitled to a new evidentiary hearing under the amended statute and remanded the petition to the superior court. As of the time this appeal was submitted for a decision in our court, the state superior court had yet to hold a new hearing on Duke's resentencing petition.[3]

## II.

We have jurisdiction pursuant to 28 U.S.C. § 2253. We review de novo a district court's application of the *Younger* abstention doctrine and must "conduct the *Younger* analysis 'in light of the facts and circumstances existing at the time the federal action was filed.'" *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018) (quoting *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 881 n.6 (9th Cir. 2011)).

We review a district court's stay order for abuse of discretion. *Dependable Highway Exp., Inc. v. Navigators*

---

[3] We take judicial notice of the docket in Duke's § 1172.6 proceedings. *See* Fed. R. Evid. 201(b); *Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012).

*Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). A district court abuses its discretion in granting or denying a stay "if it 'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (alteration in original) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

## III.

*Younger* abstention is "an extraordinary and narrow exception to the general rule that federal courts 'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir. 2018) (quoting *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017)). As Wright and Miller explain, the heart of *Younger* is the principle that "a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury." 17B Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 4251 (3d ed. 2002) (quoting *Samuels v. Mackell*, 401 U.S. 66, 69 (1971)).

In *Younger*, a plaintiff sought to enjoin a state's criminal prosecution of him for violating a state statute that the plaintiff claimed was unconstitutional under the First and Fourteenth Amendments. 401 U.S. at 38–39. A federal district court enjoined the state criminal proceeding, but the Supreme Court reversed, holding that federal courts cannot enjoin pending state criminal proceedings in the absence of exceptional circumstances. *Id.* at 40–41. The Court identified two "primary sources" for the "longstanding public policy against federal court interference with state court proceedings":

> One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. . . . This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.* at 43–44.    Though *Younger* concerned a criminal prosecution, the Court later extended the doctrine to "state civil proceedings that are akin to criminal prosecutions" and proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)).

We have articulated a four-part test to determine when *Younger* requires that federal courts abstain from adjudicating cases that would enjoin or risk interfering with pending state-court proceedings. "*Younger* abstention is appropriate when: (1) there is 'an ongoing state judicial

proceeding'; (2) the proceeding 'implicate[s] important state interests'; (3) there is 'an adequate opportunity in the state proceedings to raise constitutional challenges'; and (4) the requested relief 'seek[s] to enjoin' or has 'the practical effect of enjoining' the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (alterations in original) (quoting *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014)). Abstention is only appropriate when all four requirements are met. *See AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007). The parties' dispute centers on the third part of the test.

## A.

Our court has not yet considered whether a federal habeas petitioner's ongoing § 1172.6 proceeding mandates *Younger* abstention, but we observe at the outset that the animating rationale of *Younger* is not implicated here. Although there is an ongoing state proceeding—the resentencing under § 1172.6 based on a change in state law—the federal petition in this case does not seek an injunction to prevent state officers from moving forward with the § 1172.6 proceeding. That proceeding is in substance a new case based on a new statute, and Duke seeks no relief that would interfere with it. Instead, Duke filed his federal habeas petition eleven days before the statute of limitations expired to ensure his petition would be timely, and then sought a stay pending the resolution of his § 1172.6 proceeding. A stayed federal petition cannot have "'the practical effect of enjoining' the ongoing state judicial proceeding." *Arevalo*, 882 F.3d at 765 (quoting *ReadyLink*, 754 F.3d at 758).

*Younger* did not mandate dismissal of Duke's federal habeas petition because the third part of the test for *Younger* abstention is not met in his case. As the State concedes, the § 1172.6 resentencing proceeding will not address Duke's constitutional challenges. *See* Cal. Penal Code § 1172.6(b)–(d); *see also Arevalo*, 882 F.3d at 765. Indeed, the State's brief on appeal explains that the § 1172.6 process "is not concerned with such claims" because it is "narrowly focused on the statutory [resentencing] eligibility criteria," and "the limited nature of section [1172.6] means the state courts do not weigh whether a conviction was . . . tainted by trial error."

By filing and moving to stay his federal petition until the state resentencing proceeding concludes, Duke sought to satisfy the statute of limitations and preserve his right to file one § 2254 petition arguing that the state courts' resolution of his federal constitutional claims was unreasonable. *See* 28 U.S.C. § 2254(d)(1). To be sure, the burden of proving that a state-court proceeding fell short of federal constitutional minimums is heavy, but the right to pursue a timely filed federal habeas petition is guaranteed. *Id.* § 2254(a). For purposes of the present appeal, the salient point is that the State agrees there is no possibility the ongoing § 1172.6 proceeding will address Duke's constitutional claims; indeed, the state courts have already considered and rejected them.

The Supreme Court has been clear that *Younger* abstention is motivated by the need to refrain from granting injunctive relief where a litigant has adequate legal remedies and therefore does not face immediate irreparable injury, and by the "even more vital consideration" of comity. 401 U.S. at 44. As the Supreme Court explained three years after deciding *Younger*, "a pending state proceeding, in all but

unusual cases, [will] provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 460 (1974). "[I]n that circumstance, the restraining of an ongoing prosecution would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts 'to guard, enforce, and protect every right granted or secured by the constitution of the United States . . . .'" *Id.* at 460–61 (quoting *Robb v. Connolly*, 111 U.S. 624, 637 (1884)). "The policy of equitable restraint expressed in *Younger v. Harris*, in short, is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975); *see also Huffman*, 420 U.S. at 604; *Gilbertson v. Albright*, 381 F.3d 965, 972 (9th Cir. 2004) (en banc).

The rationale underlying the *Younger* abstention doctrine illuminates why the doctrine does not apply in Duke's case. The plaintiff in *Younger* sought to enjoin state-court proceedings because he preferred litigating his constitutional claims in federal court, even though he could have raised his constitutional challenges as a defense in his state criminal proceedings. The Court later explained why the ability to vindicate constitutional claims in state court supports abstention: if a federal court enjoins state proceedings without giving the state court an opportunity to consider a plaintiff's constitutional claims, that intervention can "be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles." *Steffel*, 415 U.S. at 462. By contrast, where, as here, a state proceeding affords no opportunity for a litigant to raise federal constitutional claims, *Younger*'s comity concerns do

not come into play because there is no risk that the federal court's actions will evince an impermissible "presumption that the state courts will not safeguard federal constitutional rights." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (emphasis omitted). Because the third part of *Younger*'s test is not satisfied, the district court erred by dismissing Duke's habeas petition based on *Younger* abstention. *See AmerisourceBergen Corp.*, 495 F.3d at 1148 ("[W]hen each of an abstention doctrine's requirements are not strictly met, the doctrine should not be applied.").

The dissent misunderstands *Younger*'s third requirement, and mistakenly suggests that the question here is "how many chances" Duke has had to raise his constitutional claims in state court. Dissent at 27. What the dissent misses is that *Younger* is not focused on the number of opportunities a state provides for challenging constitutional errors. Rather, *Younger*'s aim is to avoid interference with ongoing state-court proceedings when the state court still has a chance to rule on federal claims. *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 431; *see also Steffel*, 415 U.S. at 462. Properly framed, the third requirement for *Younger* abstention asks whether there remains an opportunity to litigate the federal claim in a state-court proceeding at the time the federal court is considering whether to abstain. *Younger*'s underlying comity rationale, coupled with the State's concession that Duke cannot litigate his federal claims in the pending § 1172.6 proceeding, is dispositive of this appeal because the only ongoing proceeding in state court does not afford another chance for the California courts to rule on Duke's federal claims.

The dissent finds it significant that the Supreme Court has used the past tense when describing litigants'

opportunities to raise constitutional claims in state court: the plaintiffs "*had* an opportunity," or their constitutional claims "*could have been raised*." Dissent at 30, 32 (first quoting *Juidice v. Vail*, 430 U.S. 327, 337 (1977); then quoting *Moore v. Sims*, 442 U.S. 415, 425 (1979)). But when read in context, it is clear the Court used the past tense because it was describing a moment in time that occurred months or years before Supreme Court review: when the plaintiff filed a federal action in district court seeking to enjoin an ongoing state-court proceeding.

Undeterred, the dissent argues that a court must "look at all state-court proceedings—past, present, and future—afforded to the plaintiff," "[a]nd if that plaintiff had or will have *any* chance to raise constitutional challenges in a state forum," *Younger* abstention is required. Dissent at 34. There is no support for this sweeping and novel interpretation of *Younger*.

In each of the cases the dissent relies upon, an opportunity still remained to raise federal constitutional claims in state court when the plaintiff initiated a federal action.[4] In *Middlesex County Ethics Committee*, for example, the plaintiff was an attorney subject to state disciplinary proceedings who filed a federal suit contending that the state's disciplinary rules violated the First Amendment. 457 U.S. at 428–29. When the district court abstained under *Younger*, the plaintiff argued that doing so was improper because he had no opportunity to raise his

---

[4] We also note that none of these cases involved a federal habeas petition, and unlike Duke, the plaintiffs in all four cases sought to enjoin ongoing state-court proceedings. *Ohio C.R. Comm'n*, 477 U.S. at 621; *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 429; *Moore*, 442 U.S. at 421–22; *Juidice*, 430 U.S. at 328–29.

federal constitutional challenges in the state disciplinary proceedings. *Id.* at 429, 435. The Supreme Court disagreed, reasoning that "nothing . . . indicate[d] that the members of the Ethics Committee . . . would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees," *id.* at 435, and observing that the New Jersey Supreme Court *did* review the plaintiff's constitutional challenges after the district court ruled, *id.* at 436. Likewise, in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, the Court concluded that *Younger* abstention was warranted where a plaintiff sought to enjoin a state civil rights commission's adjudication of a discrimination complaint. 477 U.S. 619, 629 (1986). The Court observed that the plaintiff retained the ability to raise constitutional challenges in the state court's process for reviewing the commission's decision. *Id.* at 629.

*Juidice v. Vail* is in accord. 430 U.S. at 337. There, the federal-court plaintiffs were judgment debtors who had been found in contempt in New York state court. *Id.* at 328–30. They filed a class action in federal court seeking to enjoin New York's statutory contempt procedures on constitutional grounds. *Id.* The Supreme Court held that only two of the plaintiffs had standing to pursue injunctive relief at the time they joined the federal action; one plaintiff faced a pending order of contempt, and the other had failed to comply with an order to show cause. *Id.* at 332. As to those two plaintiffs, the Supreme Court held that *Younger* abstention was warranted because both of those plaintiffs had a prospective opportunity to raise their constitutional claims in New York court in the very contempt proceedings they sought to enjoin, and the state proceedings were still ongoing when they sought injunctive relief in the federal district court. *Id.* at 330, 337 & n.14. As the Supreme Court observed, "[e]ven

after the order of contempt had been issued, a motion to vacate . . . was available, and it would have been possible to seek a stay or a temporary restraining order on the fine and commitment." *Id.* at 337 n.14; *see also Moore*, 442 U.S. at 430–31 (concluding district court should have abstained under *Younger* because plaintiffs' federal action was filed when their constitutional claims could have been asserted as counterclaims in their ongoing state-court proceeding).[5]

The State argues on appeal that the third part of *Younger*'s test was met in Duke's case—but for a different reason than the one advanced by our dissenting colleague.[6] Pointing to *Younger*'s statement that courts of equity should not act "when the moving party has an adequate remedy at law," the State argues that *Younger*'s third prong is satisfied because § 1172.6 "offers an adequate remedy even though it does not contemplate claims similar to those raised on habeas corpus." The State concludes that § 1172.6 offers Duke an adequate remedy because if his resentencing petition is successful, "it will likely result in his release on time served." In other words, the State's opposition is premised upon its prediction that if Duke prevails in the § 1172.6 proceeding, the superior court would likely reduce his conviction to assault with a deadly weapon, an offense

---

[5] The dissent focuses on plaintiff Vail, but the Court determined that Vail lacked standing because he had already paid the fine imposed in the contempt proceeding. *Juidice*, 430 U.S. at 332–33. The Court held that *Younger* abstention was warranted because the two plaintiffs who had standing also had prospective opportunities to raise their constitutional challenges in state court. *Id.* at 330, 337 & n.14.

[6] The State did not oppose Duke's motion for a stay in the district court when Duke initially requested it, but the State argued that *Younger* abstention was appropriate after the district court issued an order to show cause, and the State now opposes Duke's appeal.

that carries a maximum sentence that is lower than the amount of time Duke has already served. The State recognizes that Duke would still stand convicted and that the superior court could place Duke on parole for up to two years following the completion of his sentence, Cal. Penal Code § 1172.6(h), but it maintains "that scenario is hypothetical at this point."[7]

The State's speculative argument cannot justify *Younger* abstention. First, though *Younger* spoke broadly of abstention when a state proceeding affords "an adequate remedy," controlling case law applying *Younger* has more specifically identified the opportunity to raise federal constitutional claims in state proceedings as a "threshold element" of *Younger* abstention. *Gilbertson*, 381 F.3d at 978; *see, e.g.*, *Ohio C.R. Comm'n*, 477 U.S. at 628; *Middlesex Cnty. Ethics Comm*, 457 U.S. at 435–36; *Juidice*, 430 U.S. at 337; *Arevalo*, 882 F.3d at 766; *AmerisourceBergen Corp.*, 495 F.3d at 1149. Second, the State's characterization of the § 1172.6 proceeding as adequate ignores the difference between the relief available in the two proceedings: in the state proceeding, Duke seeks resentencing on the basis that the State's evidence did not satisfy California's definition of malice, and malice is now an element necessary for his murder conviction. By contrast, Duke's federal habeas petition argues that his original trial was infirm because it was tainted by prosecutorial

---

[7] The State does not address our precedent recognizing the "presumption that collateral consequences arise from any criminal conviction." *Wood v. Hall*, 130 F.3d 373, 376 (9th Cir. 1997) ("A petition for habeas corpus is not moot if adverse collateral consequences continue to flow from the underlying conviction."); *see also Spencer v. Kemna*, 523 U.S. 1, 7–12 (1998).

misconduct in violation of his constitutional rights. The federal petition seeks a retrial and the chance to be acquitted of all charges; the state proceeding seeks a reduced offense and resentencing.

A new judgment for assault with a deadly weapon would not offer a remedy adequate to encompass the aim of Duke's federal habeas petition, nor would it satisfy the third part of the *Younger* test because Duke has no prospect of presenting his constitutional challenges in the ongoing § 1172.6 proceeding. As such, *Younger*'s "adequate opportunity" requirement is not satisfied, and *Younger* abstention was not warranted.

**B.**

The denial of Duke's motion for a stay was also error because it was based on the misunderstanding that the district court lacked the authority to stay Duke's habeas petition. *See Dependable Highway Exp., Inc.*, 498 F.3d at 1066. When it considered Duke's initial motion for a stay, the district court reasoned that Duke "[did] not qualify for a stay" because his circumstances did not match those required for a *Rhines/Kelly* stay. *See Rhines*, 544 U.S. at 278 (allowing district courts to stay federal habeas petitions containing a mix of exhausted and unexhausted claims so petitioners may preserve the federal statute of limitations while returning to state court to exhaust their federal claims); *Kelly*, 315 F.3d at 1070–71. The requirements for *Rhines/Kelly* stays are narrow because those stays are exceptions to the general rule that courts must dismiss mixed habeas petitions without prejudice. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). The "total exhaustion rule" was designed to "encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court

with a single habeas petition." *Id.* at 520. The district court
was correct that a *Rhines/Kelly* stay would not have been
warranted in Duke's case because his habeas petition did not
include any unexhausted claims. But as the State concedes,
the fact that Duke's petition included only exhausted claims
also meant there was no prospect that a stayed federal
petition would interfere with the § 1172.6 proceeding.
Notably, under the dissent's interpretation of *Younger*, even
*Rhines/Kelly* stays would be impermissible.[8]

Because there was no chance Duke's constitutional
claims would be litigated in the resentencing proceeding, the
test for *Younger* abstention was not satisfied and the district
court retained discretion to grant a stay. *See Lockyer v.
Mirant Corp.*, 398 F.3d 1098, 1111 (9th Cir. 2005). The
circumstances weighed heavily in favor of doing so: there
was uncertainty regarding whether the § 1172.6 petition

---

[8] The rationale supporting *Rhines/Kelly* stays lends further support to the
conclusion that the district court erred by abstaining and dismissing
Duke's petition. In *Rhines*, the Supreme Court created an exception to
the pre-AEDPA rule that federal courts must dismiss mixed petitions
without prejudice, recognizing that AEDPA's one-year deadline would
otherwise create circumstances under which petitioners faced "the risk
of forever losing their opportunity for any federal review of their
unexhausted claims." 544 U.S. at 275. Likewise, our *Younger* case law
recognizes rare exceptions where abstention is inappropriate if it would
cause a plaintiff to forfeit their federal claims. *See, e.g.*, *Arevalo*, 882
F.3d 763 (holding *Younger* abstention was inappropriate when plaintiff
would face "irreparable harm" if the federal court abstained because his
habeas petition challenged the conditions of his pretrial confinement and
he had exhausted his state remedies for this claim); *Mannes v. Gillespie*,
967 F.2d 1310, 1312 (9th Cir. 1992) ("A claim that a state prosecution
will violate the Double Jeopardy Clause presents an exception to the
general rule of *Younger* . . . . [b]ecause full vindication of the right
necessarily requires intervention before trial.").

would toll Duke's federal filing deadline because there is no controlling authority on that point and the parties had not briefed the issue; only 11 days remained until Duke's AEDPA filing period ended; the State did not oppose Duke's request for a stay; and there was no possibility a stayed federal petition would interfere with the state resentencing proceeding.

The district court was not limited to considering a *Rhines/Kelly* stay, and denying a stay unnecessarily created a significant risk that Duke would lose his one chance for federal review of his constitutional claims. *See Kelly*, 315 F.3d at 1070 ("'[T]here is a growing consensus that a stay is required when dismissal could jeopardize the petitioner's ability to obtain federal review.' . . . [W]e join the 'growing consensus' in recognizing the clear appropriateness of a stay when valid claims would otherwise be forfeited." (quoting *Nowaczyk v. Warden*, 299 F.3d 69, 79 (1st Cir. 2002))). Though the dissent expresses exasperation that Duke seeks federal review of his constitutional claims after unsuccessfully raising them in several state proceedings, the layers of state review are not the federal courts' concern. The federal constitution guarantees Duke one shot at federal review of the state courts' resolution of his federal claims, and that right may be forever lost if Duke's petition is dismissed rather than stayed.[9]

---

[9] The State argues that if *Younger* does not apply, we should stay Duke's petition pursuant to *Pullman* abstention. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). That doctrine "is appropriate when: (1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095,

## IV.

We conclude the district court erred by dismissing Duke's petition for a writ of habeas corpus because the test for *Younger* abstention was not satisfied.   Under the circumstances of this case, the denial of a stay and dismissal of Duke's petition constituted an abuse of discretion.

**REVERSED and REMANDED.**

---

1104 (9th Cir. 1998).  The State did not raise *Pullman* abstention in the district court, and we generally do not consider arguments raised for the first time on appeal.

BUMATAY, Circuit Judge, dissenting:

In 2012, Jonathan Duke assisted in the murder of Victor Enriquez. Duke and Enriquez were both members of the Rollin' 60's, a gang associated with the Crips. Despite their shared gang membership, Duke and Enriquez disliked one another. Along with past physical altercations, Duke thought Enriquez was a snitch. On the night of the murder, Duke and his co-defendant, Alfred Crowder, said that they "got to do something to" Enriquez. After finding Enriquez at a nearby apartment complex, Duke and Crowder walked up to him and began to assault him. Enriquez tried to run away, but Crowder caught up. As Duke stood guard, Crowder then stabbed Enriquez 15 times, killing him. A jury found Duke guilty of first-degree murder, and he was sentenced to 25 years-to-life in prison.

Since his conviction, Duke has repeatedly claimed that his constitutional rights were violated. Among other issues, Duke believed that his prosecution violated *Brady* and *Miranda*, that the government failed to prove his guilt beyond a reasonable doubt, that his attorney provided ineffective assistance, and that the prosecution engaged in misconduct. Duke has pressed his constitutional claims in multiple state-court proceedings:

First, Duke raised his constitutional claims on direct appeal to the California Court of Appeal. That court found an error in the jury instructions used at Duke's trial under state law, caused his conviction to be reduced to second-degree murder, and had him resentenced to 15 years to life. But the court held that Duke's constitutional challenges lacked merit or were harmless error.

Second, Duke petitioned the California Supreme Court to hear his constitutional claims.  That court denied review.

Third, Duke filed a petition for a writ of habeas corpus in the California Court of Appeal, reiterating his constitutional challenges.  That petition was also denied.

Fourth, Duke asked the California Supreme Court to review his constitutional claims on habeas review.  Duke was unsuccessful.

The state-court proceedings against Duke are ongoing. In the latest iteration, Duke seeks to vacate his murder conviction under California Penal Code § 1172.6.  Under the new state law, California limited felony-murder liability and established procedures to have convictions for some felony-murder homicides vacated.  Cal. Pen. Code § 1172.6.  So persons convicted under an abolished felony-murder theory may have their convictions set aside and be resentenced on remaining convictions if certain conditions are met.  *Id*. While Duke states that he can't bring his constitutional claims in § 1172.6 proceedings, if successful, he must be released or resentenced by the state court.  The State of California opposes Duke's § 1172.6 petition and continues to defend his conviction and sentence in state court.

Now, Duke brings a habeas petition in federal district court pressing the same constitutional challenges to invalidate his state court conviction—even as state courts are adjudicating the validity of the same conviction.  Ordinarily, in the criminal context, whenever a federal action would interfere with a state action—like Duke's federal habeas petition would with the § 1172.6 proceedings—federal courts apply what's called *Younger* abstention.  *See Younger v. Harris*, 401 U.S. 37 (1971).  That is, federal courts abstain from adjudicating cases that would essentially enjoin

pending state-court proceedings. *Younger* abstention applies when a person has had an adequate opportunity to present his federal constitutional claims in state court.

The question here—how many chances must Duke have to raise his constitutional claims in state proceedings before we will invoke *Younger* abstention? The majority maintains that it doesn't matter how many times Duke had *previously* raised his claims in state court. Ignoring Duke's multiple constitutional challenges in state courts, the majority instead focuses myopically only on the pending § 1172.6 proceedings. And because Duke says that he can't raise his constitutional challenges in that particular proceeding, the majority rules that *Younger* doesn't apply. I disagree. The Supreme Court has told us that *Younger* must apply whenever a plaintiff has an opportunity to raise his constitutional claims at any stage in the state-court proceedings. And Duke has had opportunity after opportunity to litigate his federal constitutional claims in California courts. I thus respectfully dissent.

## I.

### A.

In *Younger*, the Supreme Court "espouse[d] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). *Younger* abstention derives from the principle of "comity" that we must pay to state courts. *Id*. It recognizes that we are a "Union of separate state governments" and that our constitutional system works best when States are "left free to perform their separate functions in their separate ways." *Id*. "[P]roper respect" for state governments means that we

apply no "presumption that state courts will not safeguard federal constitutional rights." *Id*. At its core, *Younger* works to prohibit federal actions from enjoining state criminal prosecutions. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989).

*Younger* is a "mandatory doctrine[]." *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005). "District courts applying *Younger* . . . may not exercise jurisdiction when [its] standards are met; there is no discretion vested in the district courts to do otherwise." *Id*. (simplified). So when the conditions for *Younger* are satisfied, unless an exception applies, *Younger* must be invoked and "the district court *must* dismiss the action." *Baffert v. Cal. Horse Racing Bd*., 332 F.3d 613, 617 (9th Cir. 2003) (emphasis added); *see Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) ("*Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts."). As we've said, *Younger* abstention is "essentially a jurisdictional doctrine." *Canatella*, 404 F.3d at 1113.

*Younger* abstention is invoked whenever "(1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Page v. King*, 932 F.3d 898, 901–02 (9th Cir. 2019) (simplified). We don't apply *Younger* if there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Id*. (simplified).

Three of these *Younger* prongs are easily met here—

First, Duke's criminal proceedings are "ongoing" in California courts.  In his pending § 1172.6 proceedings, the State of California continues to defend the validity of his murder conviction.  Like his initial conviction, at the hearing, the State must "prove, beyond a reasonable doubt, that [Duke] is guilty of murder or attempted murder" under the State's amended homicide statutes.  *See People v. Duke*, No. B300430, 2022 WL 883786, *4 (Cal. Ct. App. Mar. 25, 2022); Cal. Pen. Code § 1172.6(d)(3).  Thus, it is an extension of his prior criminal case.

Second, the ongoing § 1172.6 proceedings will determine whether Duke, a convicted murderer, remains incarcerated for the rest of his sentence—an important state interest.  *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) ("[T]he States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief.").

And finally, if Duke were to succeed in his federal habeas petition, then our court's actions would force California to release Duke, which would terminate the § 1172.6 proceeding.  So, this federal action would have the practical effect of enjoining a state-court proceeding.

Thus, *Younger*'s application turns on the third prong—whether Duke had an adequate opportunity to raise his constitutional challenges in state proceedings.

## B.

Given that Duke has already brought his federal constitutional claims in multiple state-court proceedings, *Younger*'s "adequate opportunity" requirement is satisfied here.  The Supreme Court has expressly held that *Younger*

only requires that the federal plaintiff "*had* an opportunity" to raise constitutional claims in a state proceeding. *Juidice v. Vail*, 430 U.S. 327, 337 (1977) (emphasis added). Nothing in Supreme Court precedent requires that the plaintiff have an *ongoing* opportunity to raise those claims in any particular pending state proceeding. In other words, to invoke *Younger*, the Court only requires an opportunity to raise constitutional claims at any stage of the state-court proceedings. And because Duke had at least four bites at the apple in state court, we should have applied *Younger* here.

*Juidice v. Vail* instructs how we should consider the "adequate opportunity" prong of *Younger*. In that case, a debtor, Harry Vail, Jr., defaulted on a loan and ignored multiple state-court proceedings to collect on the default. *Id*. at 329. First, a city court entered a default judgment against Vail and issued a subpoena ordering him to appear at a deposition concerning the judgment. *Id*. After failing to attend the deposition, a county court ordered Vail to appear at a hearing to show cause why he should be not punished with contempt. *Id*. Vail again failed to attend the county court hearing. *Id*. The county court then entered an order holding Vail in contempt and imposed a fine. *Id*. After Vail failed to pay the fine, the county court had him arrested. *Id*. at 330. He was released the next day after paying the fine. *Id*. Vail then became a plaintiff along with others in a federal action seeking to invalidate the state law allowing imprisonment for contempt of court as unconstitutional. *Id*. On review, the Supreme Court found that Vail lacked Article III standing because he had already been arrested and released, but it continued to the abstention analysis because two co-plaintiffs still faced the threat of imprisonment. *Id*. at 333. These remaining co-plaintiffs either faced a pending

order of contempt or had failed to comply with an order to show cause.  *Id*.

Since the co-plaintiffs never appeared in state court, they did not raise any constitutional claims in state-court proceedings.  *Id*.  Yet the Court considered whether *Younger* applied because of "the existence of an available forum for raising constitutional issues in a state judicial proceeding." *Id*. at 330.  The Court said, yes, *Younger* still applies:

> Here it is abundantly clear that appellees had an *opportunity* to present their federal claims in the state proceedings. No more is required to invoke *Younger* abstention . . . . Appellees need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings . . . and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate.

*Id.* at 337 (simplified).

To the Court, it made little difference that appellees' opportunity to raise their constitutional claims happened in past proceedings.  *Id*. at 337 n.14.  The Court emphasized the past procedural mechanisms that would have been available to appellees in state court.  Indeed, the Court observed that the "most propitious moment" to raise the claims "*would have been* at the hearing on the order to show cause."  *Id*. (emphasis added).  "Even after the order of contempt had been issued, a motion to vacate . . . was available," the Court continued, "and it would have been possible to seek a stay or a temporary restraining order on the fine and commitment." *Id.*  And if the appellees had availed themselves of those

past opportunities, then they "would have had final recourse, available as of right," to the Supreme Court. *Id.* Contrary to the majority's assertion, nothing in the Court's opinion identifies "prospective opportunities" for appellees to raise their challenges. Maj. Op. 19. Instead, the Court expressly used past tense—emphasizing what could have happened in prior proceedings. *Id.* at 337. Thus, the Court only requires that plaintiffs have *an* opportunity, including forgone opportunities, to raise their constitutional claims.

*Moore v. Sims*, 442 U.S. 415 (1979), further supports taking a broad view of adequate state-court opportunities. In that case, the State of Texas initiated custody proceedings against parents accused of child abuse. *Id*. at 419. The parents defended against the suit in juvenile court and through a petition for habeas relief in another state court. *Id*. at 420–31. As custody was litigated in multiple state-court venues, the parents brought a due process challenge to parts of the Texas Family Code in federal court. *Id*. at 421. The federal district court concluded that *Younger* abstention was not warranted because the state case was "multifaceted" and "there [was] no single state proceeding to which the plaintiffs may look for relief on constitutional or any other grounds." *Id*. at 424 (simplified). The Supreme Court found those reasons insufficient to avoid *Younger*. The Court reemphasized that federal courts should not exercise jurisdiction if the party "had an *opportunity* to present their federal claims in the state proceedings." *Id*. at 425 (quoting *Juidice*, 430 U.S. at 337). According to the Court, the only "pertinent issue is whether [the parents'] constitutional claims *could have been raised* in the pending state proceedings." *Id*. (emphasis added). The Court then established that "abstention is appropriate unless state law

clearly bars the interposition of the constitutional claims." *Id*.

*Middlesex* also makes clear that *Younger* doesn't require ongoing chances to bring constitutional challenges if there is a clear opportunity to do so in the state forum. In that case, a New Jersey bar ethics committee initiated disciplinary proceedings against an attorney. 457 U.S. at 427–28. Rather than respond to the committee, the attorney immediately sued in federal district court contending that the proceedings violated his First Amendment rights. *Id.* at 429. The district court found that *Younger* applied, but the Third Circuit reversed, holding "that the state bar disciplinary proceedings did not provide a meaningful opportunity to adjudicate constitutional claims." *Id*. at 429. After the Third Circuit ruled, the New Jersey Supreme Court *sua sponte* reviewed the attorney's constitutional issues because the local bar committees served as an arm of that court. *Id*. at 435–36.

On review, the Court in *Middlesex* ruled that both the disciplinary proceedings and the New Jersey Supreme Court's actions to review the claims independently satisfied the "adequate opportunity" prong of *Younger*. *Id*. at 435–37. First, the attorney did not show that the ethics committee, even though an administrative proceeding, would have "refused to consider" his constitutional claim. *Id.* at 435. Second, the Court saw no reason to ignore the New Jersey Supreme Court's subsequent involvement. *Id*. at 436. Once again, the Court expressly used past tense in analyzing whether the "adequate opportunity" prong is met—relying on the fact that the lawyer "has *had* abundant opportunity" to present his claim in state proceedings. *Id*. (emphasis added). "It would trivialize the principles of comity and federalism," the Court said, "if federal courts failed to take into account that an adequate state forum for

all relevant issues has clearly been demonstrated to be available *prior* to any proceedings on the merits in federal court." *Id.* at 437 (emphasis added). Thus, to the Court, there's no requirement that a party have a remaining or ongoing opportunity to present constitutional claims in state fora at the time the federal complaint is filed.

The weight of this precedent shows that a federal plaintiff has an "adequate opportunity" to raise a constitutional claim under *Younger* if those claims could have been brought *at any stage* of state-court proceedings. *Juidice*, *Moore*, and *Middlesex* teach us to look at all state-court proceedings—past, present, and future—afforded the plaintiff. And if that plaintiff had or will have *any* chance to raise constitutional challenges in a state forum, "[n]o more is required to invoke *Younger* abstention." *Juidice*, 430 U.S. at 337. Indeed, as we made clear, "*Younger* requires only the absence of 'procedural bars' to raising a federal claim in the state proceedings." *Commc'ns Telesystems Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999).

Applying these principles here, we should have affirmed the dismissal of this case. Duke has had at least four opportunities to raise his constitutional claims in state-court proceedings: twice on direct appeal and twice on collateral attack. And it makes no difference that his constitutional attacks failed. *See Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 224–25 (9th Cir. 1994). Thus, Duke has shown no "procedural bars" to raising his federal claims in state courts. Even assuming that Duke cannot bring his constitutional claims *for a fifth time* in the § 1172.6 proceeding, Duke's past opportunities more than suffice to warrant applying *Younger* here.

**C.**

To get around mandatory abstention, the majority carves up Duke's state-court proceedings and says that only his latest § 1172.6 hearing is relevant. And looking only at that limited hearing, the majority believes that California doesn't afford Duke an adequate opportunity to present his federal claims. But that's not how the Supreme Court has treated state-court proceedings. Even more, the majority seemingly implies that the Court was imprecise when it used "past tense" to describe a plaintiff's opportunity to bring federal claims. Maj. Op. 16–17. But rather than accusing the Court of using poor English, we should've just followed what it said.

Further, contrary to the majority's view, our analysis doesn't change because Duke now seeks a stay of his federal habeas proceedings to allow the state-court proceedings to play out. *See* Maj. Op. 23. That's because the "critical date for purposes of deciding whether abstention principles apply is the date the federal action is filed." *Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004). And as we've said, "[w]hen a case is one in which the *Younger* doctrine applies, the district court has no discretion; it must dismiss." *Delta Dental Plan of Cal., Inc. v. Mendoza*, 139 F.3d 1289, 1294 (9th Cir. 1998); *see also Baffert*, 332 F.3d at 617. "[I]f the district court is required to abstain under *Younger* and dismiss the suit, then it has no authority to rule on a party's motion" that asserts jurisdiction over the matter. *Meredith v. Oregon*, 321 F.3d 807, 816 (9th Cir. 2003). Thus, when *Younger* is invoked, "staying the action is not an option." Brian R. Means, *Federal Habeas Manual* § 1:112 (2022) (citing *Gibson*, 411 U.S. at 577). Indeed, it would be odd to conclude that all the conditions for *Younger* abstention exist, but to allow a plaintiff to sidestep the doctrine by simply

requesting a stay. Such a ruling would not serve the "comity" and "proper respect" due to state courts. *Middlesex*, 457 U.S. at 431.

The majority tries to avoid this straightforward *Younger* precedent based on analogies to *Rhines* and *Kelly* stays. Maj. Op. 21–22 (citing *Rhines v. Weber*, 544 U.S. 269 (2005); *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003)). But those types of stays are inapplicable here. Those stays do not involve exhausted claims or ongoing state proceedings, as here. The majority knows this, but still pushes forward with its novel abstention jurisprudence. But we shouldn't use an expansive interpretation of inapplicable *Rhines* or *Kelly* stays to contract *Younger*.

## II.

Rather than narrow our focus on whether Duke may bring his constitutional challenges in the § 1172.6 proceedings, we should have acknowledged that our court is weighing in on a ten-year saga of criminal proceedings by the State of California against Duke. By declining to invoke *Younger* abstention here, we ignore the multiple opportunities Duke had to adjudicate his constitutional claims in a state forum. We thus upset the principles of federalism that the Constitution requires us to respect. The district court was right to dismiss Duke's habeas petition— no matter the collateral consequences.

I respectfully dissent.